FILED
08-12-2021
Clerk of Circuit Court
Trempealeau County
2021CV000090

STATE OF WISCONSIN      CIRCUIT COURT      TREMPEALEAU COUNTY

ESTATE OF GEORGE D. CLAYTON,
2097 Abbey Road, Apt 108
Onalaska, WI 54650

LORI CLAYTON
2097 Abbey Road, Apt 108
Onalaska, WI 54650

MORGAN CLAYTON
2130 South Avenue, Apt. 102
La Crosse, WI 54601 US

TAYLOR CLAYTON
2097 Abbey Road, Apt 108                    Case No.:
Onalaska, WI 54650                          Case Code: 30303

           Plaintiffs,
vs.

U.S. FINANCIAL LIFE INSURANCE COMPANY
227 W Monroe Street, Suite 3775
Chicago, IL  60606-5095

HERITAGE LIFE INSURANCE HOLDINGS, LLC
227 W Monroe Street, Suite 3775
Chicago, IL  60606-5095

ABC INSURANCE CO.

           Defendants.

---

## SUMMONS

---

THE STATE OF WISCONSIN to each person named above as a Defendant:

      You are hereby notified that the Plaintiffs named above have filed a lawsuit or other legal

action against you.  The Complaint, which is attached, states the nature and basis of the legal

action.

1

**EXHIBIT A**

Within forty-five (45) days of receiving this Summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint.  The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Clerk of Circuit Court, 333 Vine Street, La Crosse, Wisconsin  54601, and to CURTIS LAW FIRM, LLC, Plaintiffs' attorneys, whose address is 201 Main Street, Suite 1000, La Crosse, Wisconsin 54601. You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint and you may lose your right to object to anything that is or may be incorrect in the Complaint.  A judgment may be enforced as provided by law.  A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated:  August 12p<sup>th</sup>, 2021          **CURTIS LAW FIRM, LLC**

*Electronically signed by Scott J. Curtis*

Scott J. Curtis (#1090049)
201 Main Street, Suite 1000
La Crosse, Wisconsin 54601
Telephone: (608) 784-1605
scott@lacrosselaw.com

2

**EXHIBIT A**

FILED
08-12-2021
Clerk of Circuit Court
Trempealeau County
2021CV000090

STATE OF WISCONSIN     CIRCUIT COURT     TREMPEALEAU COUNTY

ESTATE OF GEORGE D. CLAYTON,

LORI CLAYTON

MORGAN CLAYTON

TAYLOR CLAYTON

Case No.:
Case Code: 30303

                    Plaintiffs,

vs.

U.S. FINANCIAL LIFE INSURANCE COMPANY

HERITAGE LIFE INSURANCE HOLDINGS, LLC

ABC INSURANCE CO.

                    Defendants.

---

## COMPLAINT

---

NOW COME Plaintiffs, Estate of George D. Clayton, Lori Clayton, Morgan Clayton, and Taylor Clayton, by and through their attorneys, Curtis Law Firm, LLC, by attorney Scott J. Curtis, and for their Complaint against Defendants, U.S. Financial Life Insurance Company and ABC Insurance Co. allege as follows:

### PARTIES

1. George D. Clayton was a resident of Trempealeau County, State of Wisconsin, having an address of W17801 U.S. Highway 53/54/93, Galesville, WI 54630.

**EXHIBIT A**

2.  George D. Clayton passed away on December 6, 2020.

3.  George D. Clayton was survived by a spouse, Lori Clayton, and two children, Morgan Clayton and Taylor Clayton.

4.  Plaintiff Estate of George D. Clayton (hereinafter the "Estate") is an Informal Probate Administration Proceeding established under the Laws of the State of Wisconsin under Trempealeau County, Wisconsin Case Number 2020-PR-58.

5.  Lori Clayton and Morgan Clayton serve as Co-Personal Representatives of the Estate.

6.  Plaintiff Lori Clayton is an adult resident of the State of Wisconsin with an address of 2097 Abbey Road Apt 108, Onalaska, WI 54650.

7.  Plaintiff Morgan Clayton is an adult resident of the State of Wisconsin with an address of 2130 South Avenue, Apt. 102, La Crosse, WI  54601.

8.  Plaintiff Taylor Clayton is a minor appearing in this case by her guardian, Lori Clayton. She is a resident of the State of Wisconsin with an address of 2097 Abbey Road Apt 108, Onalaska, WI 54650.

9.  Upon information and belief, Defendant U.S. Financial Life Insurance Company is a corporation incorporated and existing under the laws of the State of Ohio, doing business in the State of Wisconsin, with its principal place of business located at 227 W Monroe Street, Suite 3775, Chicago, IL  60606-5095.

10. Upon information and belief, Defendant U.S. Financial Life Insurance Company is a subsidiary of Heritage Life Insurance Company and does not have a registered office in the state of Wisconsin.

11. Upon information and belief, Defendant Heritage Life Insurance Company is a corporation incorporated and existing under the laws of the State of Illinois, doing business in the State

4

**EXHIBIT A**

of Wisconsin, with its principal place of business located at 227 W Monroe Street, Suite 3775, Chicago, IL 60606-5095.

12. Upon information and belief, Heritage Life Insurance Company has a registered office in the state of Wisconsin of 833 E Michigan St Ste 1800 Milwaukee, WI 53202.

FACTS

13. On January 11th, 2002, George D. Clayton completed an Application for Life Insurance to U.S. Financial Life Insurance Company.

14. On February 22nd, 2002, U.S. Financial Life Insurance Company issued a life insurance policy identified as Policy Number 0000198533 (hereinafter the "Policy") naming George D. Clayton as the Insured.

15. A true and complete copy of the Policy is attached hereto as Exhibit A. The Policy speaks for itself and the terms of the complete policy are incorporated herein by reference.

16. In exchange for providing Life Insurance to the Insured for a fixed term of Twenty (20) years, the Insured agreed to make payments in the amount of $85.94 per quarter during the term period.

17. The Policy states that if the Insured dies while the policy is in force, U.S. Financial Life Insurance Company agrees to pay the amount of the death benefit.

18. The Policy states that the Insured Amount is $250,000. The Policy defines the "Insured Amount" as "An amount payable upon death of the Insured and selected by the Owner as shown on the Schedule."

19. The Policy states that the Death Benefit will be the Insured Amount; plus the amount provided by any additional benefits; plus the premium paid beyond the month of death; minus any premium due or unpaid to the end of the month of death.

**EXHIBIT A**

20. The Policy states that U.S. Financial Life Insurance Company will pay the death benefit upon receipt of proof that the Insured died while the policy was in force.

21. Upon information and belief, the Beneficiary of the Policy is Lori Clayton, but it is possible that one of the other Plaintiffs was a Beneficiary.

22. George Clayton made all premium payments due under the Policy from the date it was issued until the payment for the first and second quarters of 2020.

23. In the Spring of 2020, George Clayton was diagnosed with pancreatic cancer, among other diagnoses.

24. The cancer and treatment left George Clayton unable to generate an income to support the family.  This left the family in a difficult financial position.

25. During the cancer treatment, Lori Clayton remained employed and provided income for the family and medical insurance for George Clayton's care.

26. The premium payment due in July of 2020 was not paid in a timely manner.

27. Upon information and belief, U.S. Financial Life Insurance Company sent a notification to George Clayton that the non-payment may trigger termination of the Policy if not paid before the expiration of the 31-day grace period.

28. On November 24th, 2020, U.S. Financial Life Insurance Company sent a letter to George Clayton stating that the "Premium Due Date" under the policy was December 21, 2020.  A true and correct copy of the letter is attached hereto as Exhibit B.

29. On November 27th, 2020, U.S. Financial Life Insurance Company sent a letter to George Clayton stating that the Policy was terminated due to non-payment of premium. A true and correct copy of the letter is attached hereto as Exhibit C.

6

**EXHIBIT A**

30. On November 30th, 2020, U.S. Financial Life Insurance Company sent a letter to George
    Clayton informing him that due to the guidance published by the state's insurance
    department in response to the Covid-19 pandemic, the grace period for premium payments
    was extended. A true and correct copy of the letter is attached hereto as Exhibit D.

31. The November 30th, 2020 attached as Exhibit D letter further stated unequivocally that
    "during that extension, all coverage has remained in full force and effect".

32. The November 30th, 2020 letter further stated that "your correct premium due date is
    12/21/2020 and you must remit the amount stated on your billing notice, by 12/21/2020
    for your policy to remain in-force and active. If any due premium is not remitted by
    12/21/2020, the policy will be subject to lapse and will terminate."

33. On December 6th, 2020, George Clayton died.

34. Soon after his death, Lori Clayton submitted a claim to Defendants for the death benefit
    due under the Policy.

35. On December 10th, 2020, Lori Clayton and Morgan Clayton were appointed Co-Personal
    Representatives of the Estate of George Clayton.

36. Over the next two months, Lori Clayton made numerous attempts to communicate with U
    Defendants in writing and over the phone.

37. On February 5th, 2021, Attorney Scott Curtis sent a 30-Day Notice to U.S. Financial Life
    Insurance Company via Certified Mail advising them of the Clayton family's intent to sue
    under Wis. Stat. §628.46 for failure to make prompt payment of the death benefit due under
    the Policy due to their failure to exercise good faith in settling the Insured's claim. A true
    and correct copy of the letter is attached hereto as Exhibit E.

**EXHIBIT A**

38. On March 3rd, 2021, U.S. Financial Life Insurance Company sent a letter to George Clayton stating that "Your policy is in force" and "you may have recently received a notice advising that the above policy had lapsed due to non-payment of premium.  If received, PLEASE disregard that notice."

39. As a result of the failure by U Defendants to pay out the death benefit due under the Policy, the financial struggle of the Clayton family grew critical.

40. When the death benefit was not paid, Lori was unable to pay for the basic expenses of his estate administration or her own expenses.

41. The family residence was sold in February of 2021 and the proceeds were used to help fund the probate administration and pay expenses.

42. Lori Clayton has relocated to a much smaller apartment in Onalaska, Wisconsin due to the sale of the family residence.

43. The Estate of George D. Clayton, and ultimately Lori Clayton, incurred expenses including attorney fees, realtor fees, closing costs, and additional charges due to having to sell the family residence.

44. Relying on the Policy as an asset within their estate plan, George and Lori Clayton agreed to name their children, Morgan and Taylor Clayton, as Beneficiary of George Clayton's retirement accounts.

45. If not for her reliance on the Policy, Lori Clayton would have exercised her rights under Wisconsin marital property law to receive at least half of George Clayton's retirement accounts.

**EXHIBIT A**

46. Lori Clayton has incurred attorney fees in needing to prosecute a civil claim to compel U.S. Financial Life Insurance Company to pay the death benefit that is contractually due under the Policy.

## CLAIM I: BREACH OF CONTRACT

47.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 46 above.

48. Defendants and George Clayton had a valid and enforceable contract for life insurance.

49. Plaintiffs are Beneficiary under the life insurance contract.

50. George Clayton performed under the contract, including making payments to keep the policy in full force and effect at the time of his death.

51. Defendants have not performed, and have refused to perform, under the contract by refusing to pay out the death benefits as required under the contract.

52. Therefore, Defendants are in breach of the contract for life insurance.

## CLAIM II: FIRST PARTY BAD FAITH

53. Plaintiffs reallege and incorporate by reference paragraphs 1 through 52 above.

54. Defendants have a first-party relationship with the Estate of George Clayton insofar as the insured under its Policy was George Clayton, and after his death, the Estate of George Clayton.

55. A fiduciary duty exists between the Defendants and the Estate of George Clayton arising out of the Policy granting the insurer control over the investigation of the claim and final decision whether the death benefit should be paid.

56. Defendants failed to conduct a fair and neutral investigation of the facts and circumstances of the claim in this matter.

57. Defendants failed to inform themselves of the nature of the insured loss.

**EXHIBIT A**

58. Defendants have no reasonable basis for denying Plaintiff's claim for benefits under the policy.

59. Defendants failed to advise its insured and the Beneficiary of the results of an investigation or the facts supporting a determination.

60. Defendants confirmed multiple times after the death of George Clayton that the Policy remained in full force and effect at the time of his death, but failed to make payment of the death benefit.

61. Defendants engaged in dishonest or deceitful conduct.

62. Defendants did not act in a manner that a reasonable insurer would have acted under the particular facts and circumstances.

63. In denying the claim, Defendants either knew or recklessly failed to ascertain that the claim should have been paid.

64. Defendants exhibited a significant disregard for the rights and economic interest of the Beneficiary.

65. Plaintiffs have suffered damages in the form of being deprived of the death benefit due under the Policy.

66. Plaintiffs have suffered damages by having to incur expenses in selling the residence and in the in the form of financial hardship, additional expenses incurred, emotional damages in an amount to be determined at trial.

CLAIM III: THIRD PARTY BAD FAITH

67. Plaintiffs reallege and incorporate by reference paragraphs 1 through 66 above.

**EXHIBIT A**

68. Defendants have a third-party relationship with Beneficiary insofar as the insured under its Policy was George Clayton, and after his death, the Beneficiary was entitled to the death benefit.

69. A fiduciary duty exists between the Defendants and the Beneficiary of the Policy arising out of the Policy granting the insurer control over the investigation of the claim and final decision whether the death benefit should be paid.

70. Defendants failed to conduct a fair and neutral investigation to ascertain all of the facts of the incident giving rise to the claim.

71. Defendants demonstrated such a significant disregard of the interests of the parties in this case.

CLAIM IV: PUNITIVE DAMAGES

72. Plaintiffs reallege and incorporate by reference paragraphs 1 through 71 above.

73. Defendants' conduct has been and remains outrageous under the circumstances.

74. Defendants have acted with wanton, willful, or reckless disregard of the Plaintiffs' rights under the Policy.

75. Defendants' conduct demonstrated an indifference to the consequences of their actions on the Plaintiffs.

76. Defendants' conduct justifies a judgment which will punish the Defendants and deter the Defendants and similarly situated insurance companies from engaging in similar conduct in the future.

WHEREFORE, upon the foregoing, Plaintiff requests an ORDER AND JUDGMENT granting the following relief:

11

**EXHIBIT A**

1.  Judgment in favor of Plaintiff against Defendants on Claim I in the amount of $250,000 plus additional amounts due under the Policy and interest under Wis. Stat. §628.46.

2.  Judgment in favor of Plaintiff against Defendants on Claim II, Claim III, and Claim IV in the amount of $750,000 plus interest and additional amounts to be demonstrated at trial.

3.  Judgment in favor of Plaintiff against Defendants for an amount equal to actual costs and attorney fees incurred by Plaintiff in bringing and maintaining this action.

4.  For such other relief as the Court determines is just and equitable.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all issues in the matter

Dated:  August 12th, 2021                    **CURTIS LAW FIRM, LLC**

*Electronically signed by Scott J. Curtis*

Scott J. Curtis (#1090049)
201 Main Street, Suite 1000
La Crosse, Wisconsin 54601
Telephone: (608) 784-1605
scott@lacrosselaw.com

**EXHIBIT A**

FILED
08-13-2021
Clerk of Circuit Court
Trempealeau County
2021CV000090

# U.S. FINANCIAL
# LIFE INSURANCE COMPANY

FOR MORE INFORMATION ABOUT YOUR COVERAGE OR SERVICE
ON THIS POLICY, PLEASE CONTACT:

U.S. FINANCIAL LIFE INSURANCE COMPANY
10290 ALLIANCE ROAD
P.O. BOX 429560
CINCINNATI, OHIO 45201-2347

(513) 686-2000

# EXHIBIT A TO COMPLAINT

**EXHIBIT A**



**U.S.**
**FINANCIAL**
**LIFE** Insurance Co.

A Member of **THE MONY GROUP**

First Amendment to Policy  0000198533
Issued by U.S. Financial Life Insurance Company
Policy Date: 02/22/2002  Insured: GEORGE D CLAYTON

AMENDMENT

On the eleventh page of the Policy, entitled "Conversion Privilege", the first section, which currently reads:

**Conditions**
You may convert this policy for a new policy of permanent insurance when you:
(a) apply in writing to our Home Office while the policy is in force; and
(b) apply before the earliest of:
* the policy anniversary at which the Insured's attained age is 65; or
* the fifth policy anniversary; and
(c) pay the premium for the new policy.

Evidence of insurability is not required.

Is hereby amended to read as follows:

**Conditions**
You may convert this policy for a new policy of permanent insurance when you:
(a) apply in writing to our Home Office while the policy is inforce; and
(b) apply before the earliest of:
* the policy anniversary at which the Insured's nearest age is 70; or
* the tenth policy anniversary; and
(c) pay the premium for the new policy.

Evidence of insurability is not required.

Except as otherwise expressly amended herein, the Policy remains in full force and effect.  This First
Amendment to Policy No. 0000198533   is made effective ab initio to the Policy Date  of  02/22/2002.

The person signing for the U.S. Financial Life Insurance Co. warrants that (s)he is either the President,
an elected Vice President, or the Secretary of U.S. Financial Life Insurance Co.

President and CEO
U.S. Financial Life Insurance Co.

Date: 02/22/02

CONV-10

**EXHIBIT A**

## U.S. Financial Life Insurance Company

## SCHEDULE

BENEFIT

FIRST YEAR
ANNUAL PREMIUM

TERM LIFE INSURANCE WITH PREMIUM
ADJUSTMENT PROVISIONS TO POLICY AGE 95                    $312.50

LEVEL PREMIUM PERIOD              20   YEARS

TOTAL ANNUAL PREMIUM
FOR LEVEL PREMIUM PERIOD          $312.50

### PREMIUM PAYMENT OPTIONS

|  |  |  | PREAUTHORIZED |
| ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY CHECK |
| $312.50 | $162.50 | $85.94 | $27.81 |

ANNUAL PREMIUMS FOR POLICY YEARS AFTER THE LEVEL PREMIUM PERIOD SHOWN
ABOVE ARE SHOWN IN TABLE OF ANNUAL PREMIUMS. ALL PREMIUMS SHOWN
INCLUDE A $100 ANNUAL POLICY FEE.

OTHER PREMIUM MODES MAY BE DETERMINED BY MULTIPLYING THE ANNUAL
PREMIUMS BY THE FOLLOWING FACTORS:

|  |  | PREAUTHORIZED |
| SEMI-ANNUAL | QUARTERLY | MONTHLY CHECK |
| .52 | .275 | .089 |

INSURED: GEORGE D CLAYTON                    POLICY NUMBER: 0000198533

OWNER:  SEE APPLICATION                       ISSUE AGE:   32   MALE

INSURED AMOUNT:  $250,000                     POLICY DATE:  FEBRUARY 22, 2002

PREMIUM CLASS:  PREFERRED NONSMOKER

## EXHIBIT A

## U.S. Financial Life Insurance Company

INSURED:  GEORGE D CLAYTON                    POLICY NUMBER: 0000198533

### TABLE OF ANNUAL PREMIUMS

THE ANNUAL PREMIUMS SHOWN BELOW ARE THE GUARANTEED MAXIMUM ANNUAL PREMIUMS THAT WE MAY CHARGE. WE RESERVE THE RIGHT TO CHARGE A PREMIUM LOWER THAN THE MAXIMUM PREMIUM SHOWN BELOW IN ANY POLICY YEAR. BEFORE EACH PREMIUM DUE DATE, WE WILL NOTIFY YOU OF THE AMOUNT OF PREMIUM PAYABLE.

| POLICY YEAR | ATTAINED AGE | BASIC PREMIUM | POLICY YEAR | ATTAINED AGE | BASIC PREMIUM |
|---|---|---|---|---|---|
| 21 | 52 | 5,512.50 | 43 | 74 | 50,077.50 |
| 22 | 53 | 6,045.00 | 44 | 75 | 55,685.00 |
| 23 | 54 | 6,662.50 | 45 | 76 | 61,662.50 |
| 24 | 55 | 7,345.00 | 46 | 77 | 67,957.50 |
| 25 | 56 | 8,105.00 | 47 | 78 | 74,500.00 |
| 26 | 57 | 8,910.00 | 48 | 79 | 81,452.50 |
| 27 | 58 | 9,785.00 | 49 | 80 | 89,087.50 |
| 28 | 59 | 10,770.00 | 50 | 81 | 96,635.00 |
| 29 | 60 | 11,870.00 | 51 | 82 | 105,087.50 |
| 30 | 61 | 13,095.00 | 52 | 83 | 114,555.00 |
| 31 | 62 | 14,490.00 | 53 | 84 | 124,805.00 |
| 32 | 63 | 16,082.50 | 54 | 85 | 135,552.50 |
| 33 | 64 | 17,882.50 | 55 | 86 | 146,547.50 |
| 34 | 65 | 19,877.50 | 56 | 87 | 157,670.00 |
| 35 | 66 | 22,022.50 | 57 | 88 | 168,665.00 |
| 36 | 67 | 24,352.50 | 58 | 89 | 179,697.50 |
| 37 | 68 | 26,855.00 | 59 | 90 | 190,940.00 |
| 38 | 69 | 29,587.50 | 60 | 91 | 202,600.00 |
| 39 | 70 | 32,675.00 | 61 | 92 | 215,097.50 |
| 40 | 71 | 36,735.00 | 62 | 93 | 229,012.50 |
| 41 | 72 | 40,212.50 | 63 | 94 | 246,967.50 |
| 42 | 73 | 44,857.50 |  |  |  |

**EXHIBIT A**

U.S. Financial Life Insurance Company

INSURED:  GEORGE D CLAYTON                    POLICY NUMBER:  0000198533

TABLE OF NONFORFEITURE VALUES

THE CASH VALUES AND EXTENDED TERM INSURANCE PERIODS BELOW ARE THOSE
AT THE END OF THE POLICY YEARS SHOWN.

| AT END OF | ATTAINED | CASH | EXTENDED TERM INSURANCE | |
|-----------|----------|------|----------|------|
| POLICY YEAR | AGE | VALUE | YEARS | DAYS |

THIS POLICY DOES NOT PROVIDE ANY NONFORFEITURE VALUES

NO LOANS ARE AVAILABLE UNDER THIS POLICY.

GEM 300                              -3-

**EXHIBIT A**

## DEFINITIONS

Assignment - The Owner's transfer of a right or interest in this policy.

Attained Age - The Issue Age of the Insured as shown in the Schedule plus the number of full policy years which have elapsed since the policy date.

Beneficiary - The person chosen to receive the death benefit of this policy.

Close Relative - A person related to the Insured in any of the following ways: spouse, parent (includes step-parents), sister, brother (includes step-brother or step-sister) or child (includes legally adopted or step-child)

Evidence of insurability - Information about the Insured used to approve, exchange or reinstate this policy

Insured - The person whose life is insured as shown on the Schedule.

Insured Amount - An amount payable upon death of the Insured and selected by the Owner as shown on the Schedule.

Irrevocable beneficiary - Capable of being changed by the Owner only with consent of the irrevocable beneficiary.

Issue Age  - Age of the Insured on the Insured's birthday nearest the policy date.

Policy - All of this written document including any riders or endorsements.

Premiums - Money required to be paid to keep this policy in force.

Reinstatement - To restore coverage after the policy terminates for nonpayment of premiums.

Revocable beneficiary - Capable of being changed by the Owner without the consent of the beneficiary.

We, us, our - U.S. Financial Life Insurance Company, the insurer.

You - The Owner of the policy.

## EXHIBIT A

### GENERAL PROVISIONS

#### Basic Benefit

**Death Benefit**
We will pay the death benefit if the Insured dies while this policy is in force.

The amount of the death benefit will be:
(a)   the Insured Amount on the date of death; plus
(b)   the amount provided by any additional benefits; plus
(c)   the premium paid beyond the month of death; minus
(d)   any premium due or unpaid to the end of the month of death.

**Benefit Payments**
We will pay benefits in a lump sum unless another payment option is requested. At your request, we may pay benefits in any other manner acceptable to us.

**Notice of Claim**
We will pay a death benefit when we receive proof that the Insured died while this policy was in force. Due proof must be sent to us at our Home Office. Due proof will include a copy of the death certificate. We may request the return of the policy. All death benefits are paid from our Home Office.

GEM 300                                       -5-

## EXHIBIT A

### The Contract

#### Entire Contract
This policy, any riders, endorsements or amendments, and the attached application are the entire contract. All statements made by the Insured or on behalf of the Insured will be representations and not warranties. No statement will be used in defense of any claim unless in a written application and a copy is attached to the policy when issued. No agent or other person, except our President, elected Vice President or Secretary has the authority to:
(a)   make or modify this contract.
(b)   extend the time for payment of a premium or interest.
(c )  waive any of our rights or requirements.

Policy years, months and anniversaries are determined from the policy date.

#### Incontestability
We cannot contest this policy after it has been in force during the Insured's lifetime for two years. The two-year period starts on the policy date. In the event this policy is reinstated, information provided in the application for reinstatement is contestable for a two-year period following the date of reinstatement. We may contest the policy for nonpayment of premium at any time.

#### Non-participating
This policy is non-participating. This means that no policy dividends will be paid to you under this contract.  This policy does not share in our profits or surplus earnings.

#### Suicide
If the Insured commits suicide within two years after the policy date, the total benefit paid will be equal to premiums paid less any amounts owed under the policy.

#### Age and Sex
If the age or sex of the Insured has been misstated on the application, the amount payable will be that amount that the most recent premium paid would have purchased at the correct age or sex.

#### Termination
This policy will terminate on the earliest of the following:
(a)   When any premium due on the policy is not paid by the end of the grace period.
(b)   On the due date of any premium if you make a written request to us to terminate the policy.
(c)   On the policy anniversary nearest the Insured's 95th birthday.

GEM 300                                    -6-

## EXHIBIT A

### Premiums and Reinstatement

**Premium Adjustment Provisions**
The premiums for the level premium period are shown in the Schedule.  These premiums are guaranteed throughout the level premium period. Annual premiums for each policy year after the level premium period are determined from the Table of Annual Premiums. These annual premiums are based on the insured's attained age at the beginning of each policy year.

Premiums after the level premium period will never exceed those shown in the Table of Annual Premiums. However, we may charge a lower premium in any year than those shown. Before each policy anniversary, we will inform you of the premium for the following year.  That premium will be guaranteed throughout that year.

We base premiums on our expectations regarding factors such as mortality, investment earnings and expenses. If we change our schedule of current premiums, we will base the new premiums on a reevaluation of those factors. We cannot change the schedule of guaranteed maximum premiums shown in the Table of Annual Premiums.

We will apply any changes in the schedule of current premiums for this plan to all insureds of the same age, sex, premium class, policy size and issue year. We will not change the premium or premium class of this policy because of changes in the Insured's health, occupation or other risk factors after the policy becomes in force.

Any change in premium on this policy will have no effect on the premium charged for any riders attached to this policy.

**Premium and Grace Period**
All premiums, except the first, are due and payable in advance. Premiums must be paid directly to us at our Home Office. Upon request, we will provide you with a written receipt.

Premiums are payable annually unless you have chosen a different option. You may request in writing a different premium payment option on any policy anniversary date. This option is subject to our published rates and rules in effect on the policy date. The premiums payable for any policy year will be based on the annual premium for that year.

**Grace Period**
If, while the Insured is alive, you do not pay the premium when due, that premium is in default. You have a grace period of 31 days after the due date to pay the premium. The policy will continue during the grace period. If the Insured dies during the grace period, we will deduct the unpaid premium from the benefits of this policy.

If any due premium is not paid by the end of the grace period, the policy will terminate, except as provided under Nonforfeiture Options.

**Reinstatement**
This policy may be reinstated, while the Insured is alive, at any time within five years from the due date of the last unpaid premium.  To reinstate the policy, we must receive:
(a)   satisfactory evidence of insurability.
(b)   the payment of all unpaid premium with interest at 6% per year, compounded
       annually, to the date of reinstatement.

In the event this policy is reinstated, the suicide provision continues to be measured from the Policy Date of this contract. For purposes of the Incontestability provision, however, information provided in the application for reinstatement is contestable for a two-year period following the date of reinstatement.

**EXHIBIT A**

### Nonforfeiture Options

**Nonforfeiture Provision**
If, while this policy has a cash value, a due premium is not paid by the end of the grace period, any net cash value will be applied under one of the options below. You may choose an option, in writing, at any time within 60 days after the due date of the unpaid premium. If you do not choose, we will apply the net cash value unde Option B.

Option A. Cash – We will pay you the net cash value. We may, at our option, choose to defer payment for up to 6 months.

Option B. Extended Term Insurance – We will continue to insure the Insured for a period of time for the current net amount in force. The amount of extended term insurance will be paid if the Insured dies within the term. The first day of the term will be the due date of the unpaid premium. The length of the term will be that which the net cash value will purchase when used as a net single premium on that first day. The extended term insurance may be surrendered at any time during the term for the remaining net cash value. The net cash value of the extended term insurance within 30 days after a policy anniversary will not be less than the net cash value on such anniversary.

If this policy does not provide nonforfeiture values, the Table of Nonforfeiture Values so states. If this policy provides nonforfeiture values, the Table of Nonforfeiture Values gives the cash value, if any, and the extended term insurance term, if any, at the end of each policy year.

**Basis of Values**
All values are calculated based on the Commissioners 1980 Standard Ordinary Smoker or Nonsmoker Mortality Tables with 10-Year Select Factors. Both tables assume compound interest at rates which comply with the Standard Nonforfeiture Law for Life Insurance. All values are at least as great as those required by law in the state where this policy is delivered. Details on how values are calculated have been filed with the insurance regulator of that state.

GEM 300                                        -8-

### EXHIBIT A

## Ownership

**Ownership**

The Insured is the Owner of the policy unless an Owner other than the Insured is either:
(a)  named in the application; or
(b)  later chosen, in writing, in a form acceptable to us and which is shown by our endorsement.

Unless otherwise provided in this policy, you are entitled without the consent of any other person to:
(a)  assign this policy;
(b)  agree with us to any change of this policy; or
(c)  exercise any rights or privileges under the policy.

**Assignment**

You may assign this policy. The interest of any revocable beneficiary is subject to any assignment. We are not responsible for the validity or effect of any assignment. The assignment must be in writing and filed with us at our Home Office. We are not liable for any payment made by us before we record the assignment.

**Beneficiary**

The beneficiary is shown on the application. A change in beneficiary must be made in a form acceptable to us. No change will become effective until we record it. Once recorded, the change will be effective as of the date you signed the request. You may change the beneficiary, unless the beneficiary is irrevocable. If the beneficiary is irrevocable, you must obtain the irrevocable beneficiary's written consent to change the beneficiary.

The interest of any revocable beneficiary is subject to the rights of an assignee. The interest of any beneficiary who does not survive the Insured will pass to the Insured's estate, unless indicated otherwise in the beneficiary designation.

If any beneficiary dies
(a)  within 15 days after the Insured's death; and
(b)  before we receive proof of the Insured's death, the proceeds of the policy will be paid as if that beneficiary had not survived the Insured.

GEM 300                                         -9-

**EXHIBIT A**

**Conditional Exchange Privilege**

**Conditions**

You may be permitted to exchange this policy for a new policy on the same plan of insurance at any time within 90 days after the policy anniversary at the end of the level premium period provided:

(a)   this policy is in force on the date of exchange; and
(b)   you submit evidence of insurability acceptable to us; and
(c)   the Insured's attained age is not greater than any maximum age we specify as of the date of exchange; and
(d)   you pay the premium for the new policy.

**Type and Amount of the New Policy**

If the evidence of insurability submitted is acceptable to us, we will issue the new policy, which will be based on:

(a)   the same Insured as under this policy;
(b)   the premium class we determine based on the evidence of insurability submitted and any other evidence we choose to obtain;
(c)   the same amount of insurance as is provided by this policy at the time of exchange, or a lower amount if requested by you, but in no case less than the minimum insured amount required for the policy;
(d)   the policy date will be the date of exchange;
(e)   the issue age will be the Insured's age nearest birthday on the date of exchange;
(f)   the new policy may include each rider this policy has which is in force at the time of exchange if such rider is available at the time of exchange and is available for issue at the new age of the Insured;
(g)   the guaranteed maximum premiums for the new policy will be for the issue age and premium class of the new policy based on the premium schedule used to determine the guaranteed maximum premiums for this policy.

**Effective Date**

The new policy will become effective when we have issued it and you have:

(a)   returned this policy to us for exchange; and
(b)   paid the first premium for the new policy during the lifetime and continued insurability (as stated in the application for exchange) of the Insured.

Any premium paid under this policy for a period beyond the date of exchange will be refunded.

GEM 300                                    -10-

**EXHIBIT A**

## Conversion Privilege

**Conditions**
You may convert this policy for a new policy of permanent insurance when you:
(a)   apply in writing to our Home Office while the policy is in force; and
(b)   apply before the earliest of:
•   the policy anniversary at which the Insured's attained age is 65; or
•   the fifth policy anniversary; and
(c)   pay the premium for the new policy.

Evidence of insurability is not required.

**Type and Amount of the New Policy**
The new policy may be any permanent, level premium life insurance which we issue on the date of the new policy. The life insured and the premium class under the new policy will be the same as under this policy.  The insured amount of the new policy will:
(a)   not be greater than the amount insured in this policy at the time of conversion.
(b)   not be less than the minimum insured amount required for a new policy of the same kind.

If this policy contains a Waiver of Premium Benefit, and premiums are not being waived under it, the same provision may be included in the new policy if the Insured's attained age is less than the maximum issue age for the benefit.  Evidence of insurability is not required.

**Effective Date**
The effective date of the new policy will be the date current at the time of conversion.

The premium on the new policy is based on the premium rates at the time of conversion for the Insured's attained age, sex and premium class.

GEM 300                                  -11-

**EXHIBIT A**

**U.S. Financial Life Insurance Company**
**10290 Alliance Road, Cincinnati, OH 45242**

198533

PART 1 - Application For Life Insurance                                    Application No.

**Please Print Using Dark Ink**                          Policy No.

**Section I**

| | Name (Last    First    M) | Date of Birth M D Y | Place of Birth | Social Security No. |
|---|---|---|---|---|
| Proposed Insured #1 | Clayton  George  A | 3 15 70 | McComb IL. | 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 |

| Home Address | City | State | Zip | How Long? |
|---|---|---|---|---|
| 2123  1st Ave E | Spencer | IA | 51301 | 2 months |

| Sex | Marital Status | Occupation | Employer |
|---|---|---|---|
| M | M | Route Sales | Arnold Motor Supply |

| Business Address | City | State | Zip | How Long? |
|---|---|---|---|---|
| 615 S Grand Ave | Spencer | IA | 51301 | 4 years |

**Section II**

| | Name (Last    First    M) | Date of Birth M D Y | Place of Birth | Social Security No. |
|---|---|---|---|---|
| Proposed Insured #2 | | | | |

| Home Address | City | State | Zip | How Long? |
|---|---|---|---|---|
| | | | | |

| Sex | Marital Status | Occupation | Employer |
|---|---|---|---|
| | | | |

| Business Address | City | State | Zip | How Long? |
|---|---|---|---|---|
| | | | | |

**Section IIA**

| | Name (Last    Fist    M) | Sex | Date of Birth M D Y | Place of Birth | Height ft in | Weight lbs |
|---|---|---|---|---|---|---|
| Dependent Children | | | | | | |
| | | | | | | |
| | | | | | | |

**Section III**

Applicant Owner or Payor

Name of Applicant/Owner (if other than Proposed Insured)     Social Security No.
(Applicant must sign Page 6)          Relationship         or Taxpayer I.D. No.

Address          City          State          Zip

If Proposed is a minor, ownership will pass to Proposed Insured at age, ____. (If no designation is made, ownership will pass to Proposed Insured at age 21)
All notices and reports will be sent to the Owner unless otherwise specified in Special Requests section, Page 2

**Section IV**

Policy Specifications

| Plan of insurance | Face Amount | If UL, indicate |  |
|---|---|---|---|
| Aries 20 yAT | 250,000 | | |

☐ Option 1- Specified Amount
☐ Option 2- Specified Amount in addition to Cash Value Death Benefit.

Jul 2 9 59

Additional Benefits
☐ Waiver of Premium
☐ Waiver of State Monthly Amount (UL)
☐ Waiver of Monthly Deduction (UL)
☐ Accidental Death

☐ Children's Insurance Benefit
☐ Additional Insured Person Rider
☐ Other: _____

**Section V**

Premium Frequency: ☒ Annual  ☐ Semiannual  ☒ Quarterly  ☐ PAC  ☐ Single  ☐ Cash with Application  $ _____

Premium Name

Send premium notices to: ☒ Home  ☐ Business (Give any specific address here.)

Address          City          State          Zip

UND-C1(11/90)                    3

**EXHIBIT A**

———— PART 1 -- (Continued) ————

| Section VI | PRIMARY BENEFICIARY:  Full Name | | Percent | | Relationship |
|---|---|---|---|---|---|
| **Beneficiary For Proposed Insured #1** | _LoRi L. ClAyton_ | | _100_ | % | _wife_ |
| | | | | % | |
| | CONTINGENT BENEFICIARY:  Full Name | | Percent | | Relationship |
| | _MoRgAn E. ClAyton_ | | _100_ | % | _daughter_ |
| | | | | % | |
| | If more than one, then equally to the survivors unless otherwise stated. | | | | |

| Section VI-A | PRIMARY BENEFICIARY:  Full Name | | Percent | | Relationship |
|---|---|---|---|---|---|
| **Beneficiary For Proposed Insured #2** | | | | % | |
| | | | | % | |
| | CONTINGENT BENEFICIARY:  Full Name | | Percent | | Relationship |
| | | | | % | |
| | | | | % | |
| | If more than one, then equally to the survivors unless otherwise stated. | | | | |

**Section VII Life Insurance In Force and Pending on All Proposed Insureds, Including Business Insurance: (If none insert "None.")**

| Existing and Pending Insurance | Name of Insured | Company | Type of Coverage | Life Amount | Accidental Death | Year Issued |
|---|---|---|---|---|---|---|
| | _George_ | _Country Companies_ | _UL_ | $ _20,000_ | $ _0_ | _1987_ |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Regarding all Proposed Insureds:  (If any "Yes," give name, date and details in Remarks below.) | Yes | No |
|---|---|---|
| (a) Has any life or health insurance been applied for without it being received exactly as requested? | ☐ | ☒ |
| (b) Is the policy applied for to replace any existing insurance or annuity in this or any other company? (If "Yes," forward Replacement Forms.) | ☐ | ☒ |
| (c) Has any life insurance lapsed, been surrendered or otherwise terminated in the last 24 months? | ☐ | ☒ |

| Section VIII | Has any Proposed Insured: | Yes | No |
|---|---|---|---|
| **Special Activities** | (a) Flown as a Student, Private, Commercial or Military pilot in the past two years, or are any such flights planned in the future?  (If "Yes,"complete Aviation Questionnaire, Page 9.) | ☐ | ☒ |
| | (b) Engaged in any form of racing, sky diving, underwater diving, or other hazardous activity in the past two years?  (If "Yes," complete Avocation Questionnaire, Page 10) | ☐ | ☒ |
| | (c) Belong to or intend joining any active military, naval or aeronautic organization? | ☐ | ☒ |
| | (d) Contemplate travel or residence outside the United States or Canada? | ☐ | ☒ |

| Section IX | Has Primary or Additional Proposed Insured: | Yes | No |
|---|---|---|---|
| **Tobacco Use** | (a) Smoked tobacco within the past 12 months? | ☐ | ☒ |
| | If "Yes," and not presently smoking, when did Primary Proposed Insured quit? _____ | | |
| | When did Additional Proposed Insured quit? _____ | | |
| | (b) Used tobacco in any other form? | ☒ | ☐ |
| | If "Yes," what type? _chews  smokeless_ | | |

| Section X | | Yes | No |
|---|---|---|---|
| **Driving** | (a) Has Primary Proposed Insured and/or Additional Proposed Insured had their driver's license restricted or revoked, or been cited for more than 3 moving violations within the last 3 years? | ☐ | ☒ |

Special Requests and Remarks:

4

UND-C1(11/90)

**EXHIBIT A**

**PART II – NON-MEDICAL SECTION**

Application No. _____

1 (a) Proposed Insured #1: Height [ 5 ] ft [ 9 ] in Weight [ 200 ] lbs  Weight change in past year ☒ none ☐ loss ☐ gain ☐ lbs
(b) Do you have a personal doctor? ☒ Yes  ☐ No (If "Yes," give name, address and telephone number.)

_DR. MEYER  116 E 11TH ST  SPENCER IA 51301_

2 (a) Proposed Insured #2: Height [ ] ft [ ] in Weight [ ] lbs  Weight change in past year ☐ none ☐ loss ☐ gain ☐ lbs
(b) Do you have a personal doctor? ☐ Yes  ☐ No (If "Yes," give name, address and telephone number.)

Please answer all Questions for Each person to be insured

| | Proposed Insured #1 | Proposed Insured #2 | Proposed Children |
|---|---|---|---|

3. To the best of your knowledge have you or has any other Proposed Insured had or been told by a doctor that he or she had: (Circle conditions to which "Yes" answer applies and give details below.

| | #1 yes / no | #2 yes / no | yes / no |
|---|---|---|---|
| (a) Convulsions, epilepsy, paralysis, mental or nervous disorders? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (b) Chest pain, high blood pressure, heart murmur, heart attack, stroke, or other disorder of the heart or circulatory system? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (c) Asthma, emphysema, bronchitis, tuberculosis, or chronic respiratory disease? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (d) Jaundice, intestinal bleeding, ulcer, chronic colitis, diverticulitis, or other liver or gastrointestinal disorder? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (e) Complicated pregnancy, hysterectomy, disorder of breast or female organs? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (f) Disease of kidney, bladder, prostate, or sugar or protein in urine? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (g) Loss of vision, amputation, deformity, arthritis or any disorder of muscles, bones or joints? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (h) Cancer, tumor, diabetes or glandular disorder? | ☐ ☒ | ☐ ☐ | ☐ ☐ |

4. To the best of your knowledge have you or has any other Proposed Insured: (Circle conditions to which "Yes" answer applies and give details below.)

| | yes / no | yes / no | yes / no |
|---|---|---|---|
| (a) Other than above, had examination, treatment or consultation with a doctor, or been hospital confined during the past 5 years? | ☒ ☐ | ☐ ☐ | ☐ ☐ |
| (b) Been on, or are now on, any medication or prescribed diet? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (c) Been treated for drug addiction, alcoholism or been a member of Alcoholics Anonymous? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (d) Ever used narcotics, hallucinogens, barbiturates, heroin or any other drug not prescribed by a physician? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (e) In the past 10 years have you been treated for or been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS)? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (f) Ever received disability benefits? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (g) Been advised to have any diagnostic test, hospitalization or surgery which has not been completed? | ☐ ☒ | ☐ ☐ | ☐ ☐ |
| (h) Had a parent, brother, or sister who had cancer, diabetes, heart disease, or who committed suicide? (Please show age at onset and /or date of death).................................................. | ☐ ☒ | ☐ ☐ | ☐ ☐ |

| Person's Name | Question Number | Details or Reasons | Duration | Name, Address and Telephone # of Attending Doctor or Hospital (if applicable) |
|---|---|---|---|---|
| George | 4A | Sinus infection | /week | 712-264-3500 |
| George | 4A | 4 stitches in Arm from Cut | /week | Same As Above |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

5

UND-C1(11/90)

**EXHIBIT A**

─────────────────── HOME OFFICE ENDORSEMENTS ───────────────────

(Not to be used where prohibited by Statute or Insurance Department ruling)

## DECLARATIONS

I (We) represent that all statements and answers made in all parts of this application are full, complete and true to the best of my (our) knowledge and belief.  It is agreed that:

(1) All such statements and answers shall be the basis for and a part of any policy issued on this application.
(2) No agent or medical examiner can accept risks or make or change contracts or waive U.S. Financial's rights or requirements.
(3a) Any prepayment made with this application will be subject to the provisions of the Temporary Life Insurance Agreement;
(3b) If there is no prepayment made with this application, the policy will not take effect until both:
    (I)  the first premium is paid during the life time of the proposed insured and while his/her health and the facts and other conditions affecting his/her insurability are as described in Part I and Part II of this application;
    (II)  and until the policy is delivered to the proposed owner.
(4) No one except the President, Vice President or the Secretary can make, alter or discharge contracts or waive any of the Company's rights or requirements.
(5) Acceptance of the policy by the Owner shall constitute ratification of any changes made by U.S. Financial under "Home Office Endorsements."

NOTICE – Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an
        application or files a claim containing a false or deceptive statement is guilty of insurance fraud, which is a crime.

Dated _____ _1-11-02_   ✗ _G. Deviarie Clayton_
                        _G.D.C_               Signature or Proposed Insured #1

Signed At _Spencer   IA_
        City and State                      Signature of Proposed Insured #2

_Leonard K Jangrer_
    Witnessed by Agent                    Signature of Applicant/Owner
                                      if Other than Proposed Insured
                                      (If a corporation, state name)

By _____
                    Signature of Corporate Officer

6

UND-C1(11/90)

**EXHIBIT A**



## U.S. FINANCIAL LIFE Insurance Co.

Fax: 1-855-784-1586
800-959-3894
P.O. Box 1419
Charlotte, NC 28201-1419

**FILED**
**08-13-2021**
**Clerk of Circuit Court**
**Trempealeau County**
**2021CV000090**

11/24/2020

0100068    SP              6584        -C03-P00068-I



GEORGE D CLAYTON
W17801 US HIGHWAY 53 54 93
GALESVILLE WI 54630-2800

# EXHIBIT B TO COMPLAINT

- - - - - - - - - - - - - - - - - - - - - - - - Cut here - - - - - - - - - - - - - - - - - - - - - - - -

## U.S. FINANCIAL LIFE Insurance Co.

**NOTICE OF PREMIUM DUE**

P.O. Box 1419
Charlotte, NC 28201-1419
800-959-3894

PREMIUM DUE DATE: 12/21/2020
PREMIUM MODE:  Quarterly
AMOUNT DUE:  85.94

POLICY:   0000198533
INSURED: GEORGE D CLAYTON

0000198533  2 12212020 000008594 20   5

GEORGE D CLAYTON
W17801 US HIGHWAY 53 54 93
GALESVILLE WI 54630-2800

AGENT:         LEONARD LANGNER
AGENCY:        LIFE BROKERS RESOURCE

☐ Check (in ink) here if any change of address on reverse side

**Return notice with your payment**
**Retain check copy as proof of payment**

0100068-0000078-0000001 of 0000002-C03-b1-6584--P00068

**EXHIBIT A**



**U.S.**
**FINANCIAL**
**LIFE** Insurance Co.

FILED
08-13-2021
Clerk of Circuit Court
Trempealeau County
2021CV000090

800-959-3894
Fax: 1-855-784-1586
P.O. Box 1419
Charlotte, NC 28201-1419

11/27/20

0100072     SP              6586        -C05-P00072-I

GEORGE D CLAYTON
W17801 US HIGHWAY 53 54 93
GALESVILLE WI 54630-2800

## NOTIFICATION OF LAPSED POLICY

| | |
|---|---|
| Insured: | GEORGE D CLAYTON |
| Policy #: | 0000198533 |
| Due Date: | 8/22/2020 |
| Premium Mode: | Quarterly |
| Amount Due: | $85.94 |

Dear MR. CLAYTON:

To date, we have not received the minimum payment for your policy, therefore your policy terminated on 8/22/2020.

You may still be able to restore this coverage if you act immediately. Do not send any money at this time.

Instead, please contact our Policy Owner Service Department (800)959-3894 if you wish to apply for reinstatement of this valuable protection. We will be happy to help.

Sincerely,

Policy Owner Service Department

cc:LIFE BROKERS RESOURCE INC/LEONARD LANGNER

# EXHIBIT C TO COMPLAINT

LAPSE

0100072-0000082-0000001 of 0000002-C05-b1-6586--P00072

**EXHIBIT A**

**FILED**
**08-13-2021**
**Clerk of Circuit Court**
**Trempealeau County**
**2021CV000090**



**U.S. FINANCIAL LIFE** Insurance Co.

800-959-3894
Fax: 1-855-784-1586
P.O. Box 1419
Charlotte, NC 28201-1419

November 30, 2020

0000198533

GEORGE CLAYTON
W17801 US HIGHWAY 53 54 93
GALESVILLE, WI 54630-2800

To our valued clients:

Earlier this year, U.S. Financial Life Insurance Company ("USFL") extended the grace period for premium payments under your policy in accordance with the guidance of your state's Insurance Department in response to the COVID-19 pandemic. **Please know that, during that extension, all coverage has remained in full force and effect.**

As we return to our standard procedures for the billing of your premium payments, you may have received, or will receive, a billing notice dated **11/23/2020** that included an incorrect premium due date. Additionally, you may have also received a notice that that your policy is subject to lapsing for non-payment, or that your policy has terminated for non-payment, immediately following your billing notice. We apologize for this administrative error and for any inconvenience this may have caused you.

**Please be aware that, your correct premium due date is 12/21/2020 and you must remit the amount stated on your billing notice, by 12/21/2020 for your policy to remain in-force and active. If any due premium is not remitted by 12/21/2020, the policy will be subject to lapse and will terminate**. Upon termination, you may request for the policy to be reinstated at any time within five years from the due date of the last unpaid premium. To consider reinstatement of the policy, we must receive satisfactory evidence of insurability for the insured.

Please remit any premium due to

U.S. Financial Life Insurance Company
P.O. Box 740016
Cincinnati, OH 45274-0016

**If you have already remitted the amount stated on your billing notice, you can disregard this notification.**

# EXHIBIT D TO COMPLAINT

**EXHIBIT A**

 **Insurance Co.**

800-959-3894
Fax: 855-784-1586

P.O. Box 1419
Charlotte, NC 28201-1419

3/03/2021

0100018    SP                    6696          -C05-P00018-I

 GEORGE D CLAYTON
W17801 US HIGHWAY 53 54 93
GALESVILLE WI 54630-2800

**Policy:**   0000198533
**Insured:** GEORGE D CLAYTON

Dear MR. GEORGE D CLAYTON:

You may have recently received a notice advising that the above policy had lapsed due to non-payment of premium.

**If received, PLEASE disregard that notice.**

Your payment and that notice crossed in the mail. Your policy is in force.

You will receive a new premium notice showing the balance due, if applicable. Subsequent premium notices will reflect the total modal premium. If premiums are not paid according to the policy provisions, outlined in your contract, the policy will no longer remain in force.

If you have any questions, or need additional information, please contact our Policy Owner Service Department at the number listed above.

Sincerely,

Policy Owner Service Department

cc: LIFE BROKERS RESOURCE/LEONARD LANGNER
    file

P006/TECHRE

**EXHIBIT A**

**FILED**
**08-13-2021**
**Clerk of Circuit Court**
**Trempealeau County**
**2021CV000090**



**CURTIS LAW**
W W W . L a C r o s s e L a w . c o m

Gerard O'Flaherty
Scott J. Curtis
Jedidiah T. Taubel
David J. Fugina, Of Counsel

SCOTT J. CURTIS
scott@lacrosselaw.com
608.784.1605

February 5th, 2021

**Via U.S. Mail, Certified Mail (return receipt requested), and Fax: 1-855-784-1 586**

US Financial Life Insurance Company          U.S. Financial Life Insurance Company
10290 Alliance Rd.                           P.O. Box 740016
Blue Ash, OH, 45242-4710                     Cincinnati, OH 45274-0016

Re:    *Policy Number 0000198533*
       *Decedent: George D. Clayton*
       *Date of Death: December 6, 2020*

Dear Sir or Madam:

    This law firm represents Lori L. Clayton, Morgan Clayton, Taylor Clayton, and the Personal Representative of the Estate of George D. Clayton with respect to a claim against U.S. Financial Life Insurance Company for payment of the death benefit under the above-captioned policy.  This letter will serve as a 30-day notice of my clients' intent to sue Under § 628.46 of the Wisconsin Statutes.  I have enclosed a copy of the statute for your reference.  If you fail to make prompt payment of the full death benefit under this policy, my client will bring an action in La Crosse County Circuit Court for failure to exercise good faith in settling the insured's claim.

    I have enclosed for your reference a copy of a correspondence from your company stating that the policy was in full force and effect as of the date of death of George D. Clayton.  I have also enclosed a copy of the Domiciliary Letters for the Estate of George D. Clayton.  It is my understanding that my client has already submitted multiple claims so you should have all of the documentation you require to move this forward.

    Thank you for your attention to this matter.

CURTIS LAW FIRM, LLC

Scott J. Curtis
SJC/kea

Cc    Lori Clayton (Via email)

# EXHIBIT E TO COMPLAINT

**EXHIBIT A**

**628.38   Disclosure requirements.** The commissioner may by rule require insurers to deliver to prospective buyers of life or disability insurance, at a time specified in the rule, information consistent with ss. 601.01 and 628.34 that will improve their ability to select appropriate coverage.

**History:** 1981 c. 82.

**628.39   Extension of credit on premiums.** The extension of credit to the insured upon a premium without interest for not exceeding 60 days from the effective date of the policy, or after that time with interest at not less than the legal rate nor more than 18 percent per year on the unpaid balance, is permissible. The payment of premiums on policies issued under a mass marketing program on an installment basis through payroll deductions is not an extension of credit.

**History:** 1975 c. 371; 1979 c. 110 s. 60 (13); 1983 a. 215.

**628.40   Effect of agent's appointment on insurer.** Every insurer is bound by any act of its agent performed in this state that is within the scope of the agent's apparent authority, while the agency contract remains in force and after that time until the insurer has made reasonable efforts to recover from the agent its policy forms and other indicia of agency. Reasonable efforts shall include a formal demand in writing for return of the indicia, and notice to the commissioner if the agent does not comply with the demand promptly.

**History:** 1975 c. 371, 421.

**628.46   Timely payment of claims.** **(1)** Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer. For the purpose of calculating the extent to which any claim is overdue, payment shall be treated as being made on the date a draft or other valid instrument which is equivalent to payment was placed in the U.S. mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery. All overdue payments shall bear simple interest at the rate of 7.5 percent per year.

**(2)** Notwithstanding sub. (1), the payment of a claim shall not be overdue until 30 days after the insurer receives the proof of loss required under the policy or equivalent evidence of such loss. The payment of a claim shall not be overdue during any period in which the insurer is unable to pay such claim because there is no recipient who is legally able to give a valid release for such payment, or in which the insurer is unable to determine who is entitled to receive such payment, if the insurer has promptly notified the claimant of such inability and has offered in good faith to promptly pay said claim upon determination of who is entitled to receive such payment.

**(2m)** (a) Notwithstanding subs. (1) and (2) and except as provided in par. (b), a claim for payment for chiropractic services is overdue if not paid within 30 days after the insurer receives clinical documentation from the chiropractor that the services were provided unless, within those 30 days, the insurer provides to the insured and to the chiropractor the written statement under s. 632.875 (2).

(b) Paragraph (a) does not apply to any of the following:

1. Worker's compensation insurance.

2. Any line of property and casualty insurance except disability insurance. In this subdivision, "disability insurance" does not

include uninsured motorist coverage, underinsured motorist coverage, or medical payment coverage.

**(3)** This section applies only to the classes of claims enumerated in s. 646.31 (2).

**History:** 1975 c. 375; 1979 c. 109 s. 16; 1979 c. 110 s. 60 (13); 1981 c. 38 s. 24; Stats. 1981 s. 628.46; 2001 a. 16, 65; 2017 a. 235.

Receipt of a legally binding offer to settle a claim against the insured is not required for the insured to have a claim against the insurer for bad–faith failure to settle. Alt v. American Family Mutual Insurance Co. 71 Wis. 2d 340, 237 N.W.2d 706 (1976).

An insured may bring a tort action against an insurer for failure to exercise good faith in settling the insured's claim. This section is unrelated to such a tort action. Anderson v. Continental Insurance Co. 85 Wis. 2d 675, 271 N.W.2d 368 (1978).

The tort of bad faith handling of a claim is discussed. Davis v. Allstate Ins. Co. 101 Wis. 2d 1, 303 N.W.2d 596 (1981).

A third–party claimant cannot assert a bad faith claim against an insurer. Kranzush v. Badger State Mutual Casualty Co. 103 Wis. 2d 56, 307 N.W.2d 256 (1981).

This section applies to service insurance corporations. Physicians Service Insurance Corp. v. Mitchell, 114 Wis. 2d 338, 338 N.W.2d 326 (Ct. App. 1983).

A jury's imposition of punitive damages and finding of bad faith is adequate to show that the insurer did not have reasonable proof that it was not responsible for a claim and supports an award of prejudgment interest under sub. (1). Upthegrove v. Lumbermans Mutual Insurance Co. 146 Wis. 2d 470, 431 N.W.2d 689 (Ct. App. 1988).

Interest under s. 807.01 (4) is not in addition to interest under sub. (1). Upthegrove v. Lumbermans Insurance Co. 152 Wis. 2d 7, 447 N.W.2d 367 (Ct. App. 1989).

This section makes no distinction between the payment of claims based on judgments and all other claims; a claim may be due under sub. (2) far in advance of a judgment or award. Fritsche v. Ford Motor Credit Co. 171 Wis. 2d 280, 491 N.W.2d 119 (Ct. App. 1992).

Whether to assess 12 percent interest is dependent on whether the insurer had reasonable proof establishing that it was not responsible for payment. U.S. Fire Insurance Co. v. Good Humor Corp. 173 Wis. 2d 804, 496 N.W.2d 730 (Ct. App. 1993).

This section applies to the insurance company of a negligent tortfeasor and, thus, allows the recovery of interest by a 3rd–party claimant. When there is clear liability, a sum certain owed, and written notice of both, the plain language of this section, incorporating by reference s. 646.31 (2), imposes 12 percent simple interest on overdue payments to 3rd–party claimants. Kontowicz v. American Standard Insurance Co. of Wisconsin, 2006 WI 48, 290 Wis. 2d 302, 714 N.W.2d 105, 03–2177.

An insurer's subrogation interest did not permit it to step into the insured's shoes to assert a 12 percent interest claim under the facts and circumstances of the case. Legal subrogation gives indemnity only, and an insurer who possesses a cause of action for subrogation cannot recover beyond the amount actually dispersed by it. Zurich American Insurance Company v. Wisconsin Physicians Services Insurance Corporation, 2007 WI App 259, 306 Wis. 2d 617, 743 N.W.2d 710, 06–2320.

"Reasonable proof" in sub. (1) means that amount of information that is sufficient to allow a reasonable insurer to conclude that it may not be responsible for payment of a claim. Generally, reasonable proof is equated with whether coverage is considered "fairly debatable." An insurer should not have been penalized for exercising its right to litigate when policy language was ambiguous, the court of appeals was divided on the question of coverage, the issue of coverage was one of 1st impression in this state, and administrative rules were subsequently modified to clarify required coverage. Froedtert Memorial Lutheran Hospital, Inc. v. National States Insurance Company, 2009 WI 133, 317 Wis. 2d 54, 765 N.W.2d 251, 07–0934.

This section is limited to situations where an insurer fails to pay an insurance claim within 30 days. In this case an insurer failed to pay a contractual settlement of an insurance claim within 30 days. There is no authority for the proposition that this section can apply when an insurer fails to pay an amount required by a settlement agreement resolving a disputed claim. Singler v. Zurich American Insurance Company, 2014 WI App 108, 357 Wis. 2d 604, 855 N.W.2d 707, 14–0391.

The purpose of this section is to discourage insurance companies from creating unnecessary delays in paying claims and to compensate claimants for the value of the use of their money. If the insurer has "reasonable proof" that it is not responsible, the statute does not apply. Reasonable proof of nonresponsibility is equated with whether the "coverage issue was fairly debatable." Dilger v. Metropolitan Property and Casualty Insurance Company, 2015 WI App 54, 364 Wis. 2d 410, 868 N.W.2d 177, 14–1851.

When damages are high and policy limits are low by comparison, the potential for contributory negligence by a party is not, in itself, sufficient to constitute "reasonable proof" that will defeat an award of interest. The "reasonable proof" exception is satisfied when there is evidence sufficient to make a "reasonable insurer" conclude that it may not be responsible for payment. In this case there was no reasonable view that any contributory negligence by actors other than the defendant would have reduced the defendant insurer's liability below its policy limits. Casper v. American International South Insurance Company, 2017 WI App 36, 376 Wis. 2d 381, 897 N.W.2d 429, 15–2412.

The policy behind this section is equally applicable to single or multiple–insured situations. It is not to punish insurance companies, but to compensate claimants for the time value of their money. Casper v. American International South Insurance Company, 2017 WI App 36, 376 Wis. 2d 381, 897 N.W.2d 429, 15–2412.

This section applies to all insurers. Allison v. Ticor Title Ins. Co. 979 F.2d 1187 (1992).

Excess liability insurance. Griffin. 62 MLR 375 (1979).

**628.48   Risk retention groups.** **(1)** PROHIBITED MARKETING. A risk retention group may not do any of the following:

(a) Solicit or sell insurance to any person who is not eligible for membership in the risk retention group.



800-959-3894
Fax: 1-855-784-1586
P.O. Box 1419
Charlotte, NC 28201-1419

November 30, 2020

0000198533

GEORGE CLAYTON
W17801 US HIGHWAY 53 54 93
GALESVILLE, WI 54630-2800

To our valued clients:

Earlier this year, U.S. Financial Life Insurance Company ("USFL") extended the grace period for premium payments under your policy in accordance with the guidance of your state's Insurance Department in response to the COVID-19 pandemic. **Please know that, during that extension, all coverage has remained in full force and effect.**

As we return to our standard procedures for the billing of your premium payments, you may have received, or will receive, a billing notice dated **11/23/2020** that included an incorrect premium due date. Additionally, you may have also received a notice that that your policy is subject to lapsing for non-payment, or that your policy has terminated for non-payment, immediately following your billing notice. We apologize for this administrative error and for any inconvenience this may have caused you.

**Please be aware that, your correct premium due date is 12/21/2020 and you must remit the amount stated on your billing notice, by 12/21/2020 for your policy to remain in-force and active. If any due premium is not remitted by 12/21/2020, the policy will be subject to lapse and will terminate.** Upon termination, you may request for the policy to be reinstated at any time within five years from the due date of the last unpaid premium. To consider reinstatement of the policy, we must receive satisfactory evidence of insurability for the insured.

Please remit any premium due to

**U.S. Financial Life Insurance Company
P.O. Box 740016
Cincinnati, OH 45274-0016**

**If you have already remitted the amount stated on your billing notice, you can disregard this notification.**

**EXHIBIT A**

FILED
12-10-2020
Trempealeau County
Register in Probate
2020PR000058

LETTERS ISSUED BY:

DATE SIGNED: December 10, 2020

Electronically signed by Jill F Clark
Register in Probate



COURT
SEAL

---

**STATE OF WISCONSIN, CIRCUIT COURT, <u>TREMPEALEAU</u>_____ COUNTY**

IN THE MATTER OF THE ESTATE OF                    ☐ Amended

<u>GEORGE D. CLAYTON</u>_____              **Domiciliary Letters**
Name                                             ☒ **Informal Administration**
<u>Date of Death: 12/06/2020</u>_____      ☐ **Formal Administration**

                                                 Case No. <u>20PR</u>_____

To:   <u>Lori L. Clayton</u>_____ AND   <u>Morgan Clayton, as Co-Personal Representatives</u>
      <u>940 Lindon Drive, Apt 106</u>      <u>2130 South Avenue, Apt 102</u>
      <u>Holmen, WI 54636</u>              <u>La Crosse, WI 54601</u>

The decedent, with date of birth <u>03/05/1970</u>_____ and date of death <u>12/06/2020</u>_____, was
domiciled in <u>Trempealeau</u>_____ County, State of <u>Wisconsin</u>_____.

You are granted domiciliary letters with general powers and duties of a personal representative.

You are authorized to administer the estate as required by law.

Other: _____

*(COURT SEAL)*

| Form completed by: (Name) |
| Scott J. Curtis, Curtis Law Firm, LLC |

| Address |
| 201 Main St., Suite 1000 |
| La Crosse, WI 54601 |

| Telephone Number | Bar Number (If any) |
| 608-433-2250 | 1090049 |

---

PR-1810, 10/10 Domiciliary Letters (Informal Administration and Formal Administration)                    §§856.21 and 865.08, Wisconsin Statutes
**This form shall not be modified. It may be supplemented with additional material.**

**EXHIBIT A**



Gerard O'Flaherty                                                                                          **SCOTT J. CURTIS**
Scott J. Curtis                                                                                    scott@lacrosselaw.com
Jedidiah T. Taubel                                                                                         **608.784.1605**
David J. Fugina, Of Counsel

January 29, 2021

**Via U.S. Mail, Certified Mail (return receipt requested), and Fax:(315) 477-2410**
US Financial Life Insurance Company            U.S. Financial Life Insurance Company
10290 Alliance Rd.                              P.O. Box 740016
Blue Ash, OH, 45242-4710                        Cincinnati, OH 45274-0016

*Re:*    *Policy Number 0000198533*
         *Decedent: George D. Clayton*
         *Date of Death: December 6, 2020*

Dear Sir or Madam:

    This law firm represents Lori L. Clayton, Morgan Clayton, Taylor Clayton, and the
Personal Representative of the Estate of George D. Clayton with respect to a claim against U.S.
Financial Life Insurance Company for payment of the death benefit under the above-captioned
policy. This letter will serve as a 30-day notice of my clients' intent to sue Under § 628.46 of the
Wisconsin Statutes. I have enclosed a copy of the statute for your reference. If you fail to make
prompt payment of the full death benefit under this policy, my client will bring an action in La
Crosse County Circuit Court for failure to exercise good faith in settling the insured's claim.

    I have enclosed for your reference a copy of a correspondence from your company stating
that the policy was in full force and effect as of the date of death of George D. Clayton. I have
also enclosed a copy of the Domiciliary Letters for the Estate of George D. Clayton. It is my
understanding that my client has already submitted multiple claims so you should have all of the
documentation you require to move this forward.

    Thank you for your attention to this matter.

                                                **CURTIS LAW FIRM, LLC**

                                                Scott J. Curtis
                                                SJC/kea

Cc    Lori Clayton (Via email)

**EXHIBIT A**

FILED
09-07-2021
Clerk of Circuit Court
Trempealeau County
2021CV000090

STATE OF WISCONSIN     CIRCUIT COURT     TREMPEALEAU COUNTY

ESTATE OF GEORGE D. CLAYTON,

LORI CLAYTON

MORGAN CLAYTON

TAYLOR CLAYTON

Case No.: 21-CV-90
Case Code: 30303

Plaintiffs,

vs.

U.S. FINANCIAL LIFE INSURANCE COMPANY

HERITAGE LIFE INSURANCE HOLDINGS, LLC

ABC INSURANCE CO.

Defendants.

---

## ADMISSION OF SERVICE

---

I, Jay Kallas, Attorney for U.S. Financial Life Insurance Company in the above-entitled proceeding hereby acknowledges due, sufficient and timely personal service of a true, correct authenticated copy of the Summons and Complaint on U.S. Financial Life Insurance Company in the above referenced matter.

Dated this 3rd day of September, 2021.

Attorney Jay Kallas, General Counsel
U.S. Financial Life Insurance Company
227 West Monroe Street, Suite 3775
Chicago, IL 60606

1

**EXHIBIT A**

FILED
09-07-2021
Clerk of Circuit Court
Trempealeau County
2021CV000090

STATE OF WISCONSIN     CIRCUIT COURT     TREMPEALEAU COUNTY

ESTATE OF GEORGE D. CLAYTON,

LORI CLAYTON

MORGAN CLAYTON

TAYLOR CLAYTON

                                      Case No.: 21-CV-90
                                      Case Code: 30303

               Plaintiffs,

vs.

U.S. FINANCIAL LIFE INSURANCE COMPANY

HERITAGE LIFE INSURANCE HOLDINGS, LLC

ABC INSURANCE CO.

               Defendants.

---

## STIPULATION

---

The undersigned stipulate that the Defendant, Heritage Life Insurance Holdings, LLC, is dismissed from the above-captioned action with prejudice.

Dated:  September 3RD, 2021

                                             **CURTIS LAW FIRM, LLC**

                                             *Electronically signed by Scott J. Curtis*

Attorney Jay Kallas, General Counsel          Scott J. Curtis (#1090049)
U.S. Financial Life Insurance Company     201 Main Street, Suite 1000
227 West Monroe Street, Suite 3775       La Crosse, Wisconsin 54601
Chicago, IL 60606                          Telephone: (608) 784-1605
                                             scott@lacrosselaw.com

**EXHIBIT A**

FILED
09-07-2021
Clerk of Circuit Court
Trempealeau County
2021CV000090

**DATE SIGNED: September 7, 2021**

<u>Electronically signed by Honorable Rian W. Radtke</u>
Circuit Court Judge

STATE OF WISCONSIN      CIRCUIT COURT      TREMPEALEAU COUNTY

ESTATE OF GEORGE D. CLAYTON,

LORI CLAYTON

MORGAN CLAYTON

TAYLOR CLAYTON

Case No.: 21-CV-90
Case Code: 30303

                 Plaintiffs,

vs.

U.S. FINANCIAL LIFE INSURANCE COMPANY

HERITAGE LIFE INSURANCE HOLDINGS, LLC

ABC INSURANCE CO.

                 Defendants.

ORDER TO DISMISS ONE PARTY

. Based upon the stipulation of the Parties in the above-captioned case, the Court orders that Heritage Life Insurance Holdings, LLC is dismissed from this case with prejudice.

1

**EXHIBIT A**